UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KHALIFAH EL-AMIN DIN SAIF'ULLAH,<br><br>Plaintiff,<br><br>v.<br><br>ASSOCIATE WARDEN S.R.<br>ALBRITTON, et al.,<br><br>Defendants.<br><br>_____<br><br>AND RELATED CASES. | Case Nos. 15-CV-5600-LHK (PR)<br>15-CV-6315 LHK (PR)<br>15-CV-6316 LHK (PR)<br>15-CV-6317 LHK (PR)<br>15-CV-6318 LHK (PR)<br>15-CV-6319 LHK (PR)<br>15-CV-6320 LHK (PR)<br>16-CV-0004 LHK (PR)<br>16-CV-0150 LHK (PR)<br>16-CV-0156 LHK (PR)<br>16-CV-0157 LHK (PR)<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING MOTION TO REVOKE SAIF'ULLAH'S IN FORMA PAUPERIS STATUS; GRANTING MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs Khalifah El-Amin Din Saif'ullah, Enver Karafili, Montshu Abdullah, Amir Shabazz, Abdullah Saddiq, Mujahid Ta'lib Din, Andre Lamont Batten, Hatim Fardan, Abdul Aziz, Anthony Bernard Smith, Jr., and Damian Mitchell are California state prisoners proceeding *pro se*. Each plaintiff filed a civil rights complaint under 42 U.S.C. § 1983. After a review of the

complaints, the court issued an order relating and consolidating these eleven cases. On October 18, 2016, defendants moved for judgment on the pleadings based on qualified immunity in all eleven cases; to revoke the *in forma pauperis* ("IFP") status of plaintiff Khalifah E.D. Saif'ullah ("Saif'ullah") in Case No. 15-CV-5600 LHK; and for summary judgment in ten plaintiffs' cases but not in Saif'ullah's case for failure to exhaust administrative remedies. Each plaintiff filed an opposition in his respective case, and defendants filed replies. Defendants' request for judicial notice is GRANTED. For the reasons stated below, defendants' motion for a judgment on the pleadings is DENIED, defendants' motion to revoke Saif'ullah's IFP status is DENIED, and defendants' motion for summary judgment based on exhaustion is GRANTED.[1]

## FACTUAL BACKGROUND

According to the complaints, plaintiffs are practicing Muslims incarcerated at San Quentin State Prison ("SQSP") in the West Block. As part of their religious beliefs, plaintiffs must pray five times daily at specified times. Plaintiffs believe that they will receive at least 25 times more blessings during a congregational prayer than during individual prayer. SQSP staff had an unofficial rule that prevented SQSP Muslim inmates from offering congregational prayer in groups of more than 4 inmates at a time.

On September 22, 2013, non-defendant Correctional Sergeant Dutton prohibited plaintiffs from offering congregational prayer of more than 4 prisoners during "open dayroom" even though a group of about 25 Christian prisoners was simultaneously offering an evening congregational prayer and was not interrupted by correctional staff.

Plaintiffs filed a group administrative appeal, SQ-13-2801, complaining that they were being discriminated against based on their religion. At the first level of review, the response denied the appeal, but noted that "Muslims are entitled to congregational prayer in their designated worship area (i.e., church)." Saif'ullah Compl., Dkt. No. 1 at 27. At the second level of review,

---

[1] Defendants' motion to stay discovery is denied as moot.

the prison denied plaintiffs' request to participate in congregational prayer of more than 4 prisoners in the open dayroom, but granted "his request to practice his religious faith without discrimination; practice his faith in designated areas of the chapel, his assigned cell, or any other appropriate dayroom are where he can reasonably practice his faith." Saif'ullah Compl., Dkt. No.1 at 29. At the third level of review, the plaintiffs' group appeal was granted, and plaintiffs' complaint was referred to the Religious Review Committee. Based on the Religious Review Committee's discussions, on June 3, 2014, defendant Associate Warden Albritton issued a religious accommodation order ("June 3, 2014 order"), which authorized: (1) "Faith prayer will be allowed to occur in the West Block during the evening activity program, approximately at sunset"; (2) "No more than 15-individuals will be allowed to participate in these sessions"; and (3) "Prayer will last no longer than 6 to 8 minutes." Saif'ullah Compl., Dkt. No. 1 at 39.

Beginning on June 28, 2014, plaintiffs joined in congregational noon, afternoon, and sunset prayers in the open dayroom. On November 17, 2014, Associate Warden Albritton and Correctional Lieutenant R. Kluger ("Kluger") directed Saif'ullah to inform the other Muslim prisoners to stop conducting noon and afternoon congregational prayers in the open dayroom.[2] Defendants stated that the June 3, 2014 order only permitted Muslim prisoners to participate in congregational prayer in the open dayroom from 7:30 p.m. to 9:00 p.m., and did not authorize noon or afternoon congregational prayers in the open dayroom.

Plaintiffs allege that Saif'ullah filed an administrative appeal, SQ-14-2903, specifically challenging defendants' prohibition on noon and afternoon congregational prayers in the open dayroom. That appeal, SQ-14-2903, reached the third level of review, which again referred the matter to the Religious Review Committee. Plaintiffs allege that the Religious Review Committee

---

[2] Even before the group appeal, SQ-13-2801, plaintiffs were permitted to participate in congregational prayers of up to 4 prisoners. Saif'ullah Compl. at 4. Although it is unclear from the pleadings, the court infers that in June 2014, plaintiffs began participating in noon and afternoon congregational prayers consisting of more than 4 prisoners at a time, which defendants disallowed on November 17, 2014.

ultimately decided to reduce the number of Muslim prisoners for congregational prayers to no more than five, while the Jewish and Christian prisoners are permitted to offer an unlimited amount of congregational prayers with as many prisoners as they would like in the open dayroom.

The court found that, liberally construing the complaints, plaintiffs stated cognizable claims that defendants violated the First Amendment Free Exercise Clause, First Amendment Establishment Clause, First Amendment right against retaliation, Fourteenth Amendment right to equal protection, and the RLUIPA.

## Motion for Judgment on the Pleadings

Defendants have filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the basis of qualified immunity in all eleven cases. Defendants argue that, taking the factual allegations of the complaints as true, no reasonable officer would believe that enforcement of the June 3, 2014 order to prohibit plaintiffs from participating in a large group[3] congregational prayer in the open dayroom outside of the specified evening time was clearly unlawful.

I.     Standard of Review

After the pleadings are closed "but early enough not to delay trial," a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog" because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c) motion may thus be predicated on either 1) the lack of a cognizable legal theory or 2) insufficient facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss under Rule 12(c), the court "must

---

[3] It is unclear how many Muslim prisoners were participating in the noon or afternoon congregational prayer. The court presumes it was more than 4 prisoners. For ease of reading, the court will use the term "large group" throughout this order to refer to a number of at least 4 prisoners.

accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [the plaintiff]'s allegations in its pleadings as true, [the defendant] is entitled to judgment as a matter of law." *Compton Unified School Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010).

Although a court generally is confined to the pleadings on a Rule 12(c) motion, "[a] court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). However, the attachment of a document as an exhibit to the complaint does not mean that the plaintiff has adopted as true all the statements in the document. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995). For example, attaching to the complaint a letter written by the defendant does not mean that the plaintiff has admitted that the defendant's statements are true; rather, it means only that plaintiff admits that the defendant made the statements.

II.     Qualified Immunity

Defendants argue that they are entitled to qualified immunity based on the face of the complaints and their attachments because defendants ordered plaintiff to comply with the June 3, 2014 order. Defendants claim that no reasonable officer would believe that the enforcement of the June 3, 2014 order to prohibit a large group prayer outside of the specified evening time was clearly unlawful.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief

about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (citations omitted). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* It is plaintiff's burden to prove the existence of a "clearly established" right at the time of the challenged conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). The defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights. *Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995).

As recognized in the court's screening orders, plaintiffs' complaints alleged violations of a First Amendment Free Exercise Clause, First Amendment Establishment Clause, First Amendment right against retaliation, Fourteenth Amendment right to equal protection, and the RLUIPA. Although plaintiffs did assert in their federal complaints that defendants violated the June 3, 2014 order, that assertion was only one portion of their allegations. Among other things, plaintiffs also argued that Christian and Jewish prisoners were allowed to offer an unlimited

amount of congregational prayers without a maximum number of participants. Plaintiffs alleged that defendants directed plaintiffs to stop noon and afternoon congregational prayers in retaliation for plaintiffs having filed an administrative grievance.

A resolution of the qualified immunity defense at this stage of the proceeding raises factual questions outside the context of plaintiffs' complaints. While the June 3, 2014 order appears to explicitly authorize up to 15 Muslim prisoners to participate in congregational prayer "during the evening program, approximately at sunset" in the open dayroom, there is no indication that it, or some other rule, necessarily prohibited Muslim prisoners from engaging in large group noon or afternoon congregational prayers in the open dayroom. That is, the June 3, 2014 order does not mandate exclusion of all other large group congregational prayer times in the open dayroom, although defendants interpreted it as such. It is also possible that large group congregational prayers at other times in the open dayroom were governed by other rules than the June 3, 2014 order. These facts are not before the court.

Whether the defendants' conduct was reasonable therefore involves a factual analysis of the circumstances surrounding defendants' actions, and a determination of whether a reasonable official similarly situated would have been aware that his actions violated clearly established law involving claims of violating the First Amendment Free Exercise Clause, First Amendment Establishment Clause, First Amendment right against retaliation, Fourteenth Amendment right to equal protection, and the RLUIPA. The court cannot conduct this type of inquiry when ruling on a motion for judgment on the pleadings.

Focusing on the facts as alleged by plaintiffs in their complaints, the court concludes that at this stage of the proceeding, defendants have not established that they could have reasonably, but mistakenly, believed that their conduct did not violate plaintiffs' clearly established constitutional rights. Assuming that defendants directed plaintiffs to stop their noon or afternoon congregational prayer in the open dayroom based on defendants' reliance on the June 3, 2014 order, the court would need affidavits or evidence outside plaintiffs' complaints and attachments

thereto to establish defendants' beliefs, which would improperly convert this motion to a motion for summary judgment. Moreover, even if defendants' conduct was in reliance on the June 3, 2014 order, defendants have not attempted to argue how their conduct was reasonable with respect to preventing Muslim prisoners from participating in congregational prayers, but allowing Christian and Jewish prisoners to participate in congregational prayer in the open dayroom during the noon and afternoon hours. Nor have defendants explained how they could reasonably but mistakenly believe that preventing plaintiffs from engaging in noon and afternoon congregational prayers because plaintiffs filed an administrative grievance was lawful.

Accordingly, defendants' motion for judgment on the pleadings based on qualified immunity is DENIED without prejudice.

**Motion to Revoke Saif'ullah's IFP Status**

Defendants move to revoke Saif'ullah's IFP status because he has filed at least three prisoner cases that qualify as "strikes" under 28 U.S.C. § 1915.

The Prison Litigation Reform Act of 1995 ("PLRA") was enacted, and became effective, on April 26, 1996. It provides that a prisoner may not bring a civil action IFP under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

For purposes of a dismissal that may be counted under Section 1915(g), the phrase "fails to state a claim on which relief may be granted" parallels the language of Federal Rule of Civil Procedure 12(b)(6) and carries the same interpretation, the word "frivolous" refers to a case that is "of little weight or importance: having no basis in law or fact," and the word "malicious" refers to a case "filed with the 'intention or desire to harm another.'" *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (citation omitted). Only cases within one of these three categories can be counted as strikes for section 1915(g) purposes. *See id.* Dismissal of an action under Section

1915(g) should only occur when, "after careful evaluation of the order dismissing an [earlier] action, and other relevant information, the district court determines that the action was dismissed because it was frivolous, malicious or failed to state a claim." *Id.*

"[I]f defendants challenge a prisoner-plaintiff's IFP status, then the initial production burden rests with the defendants. . . . [T]he defendants must produce documentary evidence that allows the district court to conclude that the plaintiff has filed at least three prior actions" that can be counted under Section 1915(g). *Id.* at 1120. Sometimes, the docket sheet may provide enough information to show the dismissal satisfies at least one of the Section 1915(g) criteria, but if it does not reflect the basis for the dismissal, the defendants may not simply rest on the fact of the dismissal and must instead produce court records or other documentation that will allow the district court to determine that the prior case was dismissed because it was frivolous, malicious or failed to state a claim. *Id.*; *see, e.g.*, *id.* at 1120-21 (docket sheets that showed the several cases that were dismissed were adequate proof of only the one case that the docket sheets showed was dismissed for failure to state a claim under Rule 12(b)(6); remanding case for the court to review the orders of dismissal and other relevant information for the other cases to see if they could count as strikes).

Here, defendants allege that Saif'ullah has filed at least three actions that were dismissed on the basis that they were frivolous, malicious, or failed to state a claim. Defendants support this argument by identifying the following cases as qualifying as "strikes" under Section 1915(g): (1) *Saif'ullah v. Davis, et al.*, No. 99-cv-1150 (E.D. Cal. July 23, 1999) (dismissed under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)), Dkt. No. 37-1 at 4-11; (2) *Saif'ullah v. Ortega, et al.,*, No. 02-cv-1214 (E.D. Cal. Feb. 10, 2003) (dismissed under *Heck*), Dkt. No. 37-1 at 12-21; and (3) *Saif'ullah v. Garnica, et al.*, No. 02-cv-1841 (E.D. Cal. Feb. 14, 2007) (dismissing case for failing to state a claim), Dkt. No. 37-1 at 22-28.

Until recently, the Ninth Circuit had not definitively answered the question of whether a dismissal under *Heck* qualified as a strike under Section 1915(g). In *Washington v. Los Angeles*

*County Sheriff's Department*, 833 F.3d 1048 (9th Cir. 2016), the Ninth Circuit concluded that a *Heck* dismissal does not categorically count as a dismissal for failure to state a claim. In that case, the Ninth Circuit analyzed whether the dismissal of Washington's 2009 civil rights complaint counted as a strike. In the 2009 complaint, "Washington claimed that the defendants, in a separate state proceeding, had applied an improper sentencing enhancement, causing him to remain in prison for an additional year, in violation of his Fourteenth Amendment rights." *Id.* at 1052. Washington requested a recall of his sentence, as well as monetary damages. A magistrate judge screened the complaint, concluded that *Heck* required dismissal of the claim, and advised Washington to seek habeas relief for a recall of his sentence. *Id.*

The Ninth Circuit recognized two kinds of cases in which *Heck* is implicated. The first are cases in which a prisoner files a civil suit seeking only monetary damages for an alleged unlawful conviction. "*Heck* barred the suit because an award of damages would undermine the validity of the underlying conviction, and the entire action therefore faced dismissal under *Heck*." *Id.* at 1057. For those types of cases, the dismissals pursuant to *Heck* counted as a strike under Section 1915(g). The second kind of case is that in which a prisoner seeks injunctive relief that challenges his conviction or sentence, and also seeks monetary relief for that same conviction or sentence. *Id.* "The first request, for injunctive relief, sounds in habeas, and is not subject to the PLRA's regime. [Citation omitted.] The second request, seeking damages, is intertwined with [the prisoner's] plea for injunctive relief, and is therefore subject to dismissal under *Heck*." *Id.* For these second types of cases, when there are multiple claims within a single action, a PLRA strike does not apply; it is applicable only when the "case as a whole is dismissed for a qualifying reason." *Id.*

Applying this rule in *Washington*, the Ninth Circuit concluded that while one portion of the prisoner's claim – the portion requesting damages – may have been dismissed for failing to comply with *Heck*, the rest of the claim – the portion requesting injunctive relief – was more properly a habeas claim. *Id.* The Ninth Circuit stated, "Because [the prisoner's] *Heck*-barred damages claims are thus intertwined with his habeas challenge to the underlying sentence, we

Case Nos. 15-CV-5600 LHK (PR), et al.
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING MOTION TO REVOKE SAIF'ULLAH'S IN FORMA PAUPERIS STATUS; GRANTING MOTION FOR SUMMARY JUDGMENT
10

decline to impose a strike with respect to his entire action."

Similarly here, in the first case cited by defendants, *Saif'ullah v. Davis, et al.*, No. 99-cv-1150 (E.D. Cal. July 23, 1999), the district court found that Saif'ullah's claims of false imprisonment and excessive punishment arose out of Saif'ullah's imprisonment from a 1980 criminal conviction. Dkt. No. 37-1 at 8. The district court noted that Saif'ullah sought monetary damages as well as injunctive relief including release from confinement. *Id.* at 9. Ultimately, the district court dismissed the case without prejudice, and concluded that Saif'ullah's claims for damages were not cognizable because Saif'ullah had not yet proven that his confinement was illegal. *Id.* The district court informed Saif'ullah that he could bring a habeas corpus action challenging his 1980 conviction and sentence if he exhausted his claims. The district court then dismissed the case on *Heck* grounds. *Id.* While Saif'ullah's damages portion of his claim was dismissed for failure to comply with *Heck*, the portion of Saif'ullah's claim requesting discharge from confinement is so intertwined with the request for monetary damages that, pursuant to *Washington*, the court does not find that *Saif'ullah v. Davis, et al.*, No. 99-cv-1150 (E.D. Cal. July 23, 1999), qualifies as a strike under Section 1915(g).

Defendants cited only three cases in support of their argument that Saif'ullah's IFP status should be revoked under Section 1915(g). Because *Saif'ullah v. Davis, et al.*, No. 99-cv-1150 (E.D. Cal. July 23, 1999), does not qualify as a strike, it is unnecessary to analyze the remaining two proffered cases because defendants cannot meet their initial burden of producing sufficient evidence to allow the court to conclude that Saif'ullah has filed at least three prior actions that could be counted as strikes under Section 1915(g). Accordingly, defendants' motion to revoke Saif'ullah's IFP status is DENIED with prejudice.

**Motion for Summary Judgment**

Defendants do not move for summary judgment in Saif'ullah's case. Defendants move for

summary judgment in the other ten plaintiffs' cases[4] based on these ten plaintiffs' failure to exhaust administrative remedies.

## I.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *See id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *See id.* at 1166.  But if material facts are disputed, summary judgment should be denied. *See id.*  The defendants' burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that

---

[4] These ten plaintiffs are: Enver Karafili, Case No. 15-CV-6315 LHK; Montshu Abdullah, Case No. 15-6316 LHK; Amir Shabazz, Case No. 15-CV-6317 LHK; Abdullah Saddiq, Case No. 15-6318 LHK; Mujahid Ta'lib Din, Case No. 15-6319 LHK; Andre Lamont Batten, Case No. 15-CV-6320 LHK; Hatim Fardan, Case No. 16-CV-0004 LHK; Abdul Aziz, Case No. 16-CV-0150 LHK; Anthony Bernard Smith, Jr., Case No. 16-CV-0156 LHK; and Damian Mitchell, Case No. 16-CV-0157 LHK.  The court shall hereinafter refer to these plaintiffs as "the ten plaintiffs."

United States District Court
Northern District of California

1   available administrative remedy. *See id.* at 1172. Once the defendants have carried that burden,

2   the prisoner has the burden of production. *See id.* That is, the burden shifts to the prisoner to

3   come forward with evidence showing that there is something in his particular case that made the

4   existing and generally available administrative remedies effectively unavailable to him. *See id.*

5   The ultimate burden of proof remains with the defendants. *See id.*

6   II.   Exhaustion

7        The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

8   with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner

9   confined in any jail, prison, or other correctional facility until such administrative remedies as are

10  available are exhausted." 42 U.S.C. 1997e(a). Compliance with the exhaustion requirement is

11  mandatory. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

12       The PLRA's exhaustion requirement cannot be satisfied by filing a "procedurally defective

13  administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "The text of 42

14  U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the

15  term means in administrative law, where exhaustion means proper exhaustion." *Id.* at 92.

16  Therefore, the PLRA exhaustion requirement requires proper exhaustion. *See id.* Compliance

17  with prison grievance procedures is all that is required by the PLRA to properly exhaust. *See*

18  *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). "Proper exhaustion demands compliance with an

19  agency's deadlines and other critical procedural rules because no adjudicative system can function

20  effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91

21  (footnote omitted).

22       The California Department of Corrections and Rehabilitation ("CDCR") provides its

23  inmates and parolees the right to appeal administratively "any policy, decision, action, condition,

24  or omission by the department or its staff that the inmate or parolee can demonstrate as having a

25  material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15,

26  § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging

27  Case Nos. 15-CV-5600 LHK (PR), et al.
    ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING MOTION TO REVOKE
28  SAIF'ULLAH'S IN FORMA PAUPERIS STATUS; GRANTING MOTION FOR SUMMARY JUDGMENT
                                          13

United States District Court
Northern District of California

misconduct by correctional officers. *See id.* Under the regulations, as amended effective January 28, 2011, the informal grievance level was omitted. Thus, only three levels are necessary to comply with the exhaustion requirement: first level appeal, second level appeal, and third level appeal. Cal. Code Regs. tit. 15, § 3084.7.

III.    Analysis

Defendants argue that out of the eleven plaintiffs, Saif'ullah was the only plaintiff to file an administrative appeal, i.e., SQ-14-2903, regarding defendants' November 17, 2014 directive that Muslim prisoners could not participate in noon or afternoon congregational prayers in the open dayroom. Defendants provide evidence showing that ten plaintiffs did not file an individual administrative appeal or participate in a group appeal specifically regarding the November 17, 2014 incident. Spisak Decl. ¶¶ 10, 12, 14, 16, 18, 20, 22, 24, 26, 28 and Exs. A - J;Voong Decl. ¶¶ 11, 13, 15, 17, 19, 21, 23, 25, 27, 29 and Exs. A - J. The ten plaintiffs do not dispute this evidence. The court finds that defendants have met their burden of proving that there was an administrative remedy available to exhaust the ten plaintiffs' claims, and the ten plaintiffs did not pursue that remedy. *See Albino*, 747 F.3d at 1172. The burden now shifts to the ten plaintiffs to come forward with evidence showing that there is something in their particular cases that made the existing and generally available administrative remedies effectively unavailable to them. *See id.*

In response, plaintiffs argue that their group appeal, SQ-13-2801, filed on September 25, 2013, exhausted their federal claims regarding defendants' November 17, 2014 directive that Muslim prisoners could not participate in noon or afternoon congregational prayers in the open dayroom.[5] Specifically, plaintiffs argue that their current claims are a continuation of the issues alleged in their SQ-13-2801 group appeal, and therefore, their group appeal satisfies the exhaustion requirement.

---

[5] Defendants remark in their reply that further investigation reveals that plaintiffs Fardan, Din, Aziz, and Mitchell did not participate in the group appeal, SQ-13-2801, filed on September 25, 2013. Reply at 4 n.3.

United States District Court
Northern District of California

The PLRA's purpose of exhaustion does not support the conclusion that the group appeal, SQ-13-2801, exhausted plaintiffs' federal claims. The PLRA was intended to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement provides prison officials with an initial opportunity to resolve disputes, which potentially reduces the number of federal prisoner lawsuits and improves the quality of lawsuits that are filed. *See Jones v. Bock*, 549 U.S. 199, 204, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."). "[T]he primary purpose of a grievance is to alert prison officials to a problem." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) (cited with approval in *Jones*, 549 U.S. at 219). In addition, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). While a grievance is not required to include every fact necessary to prove each element of an eventual legal claim, the purpose of a grievance is to alert the prison to a problem and facilitate its resolution. *See id.* Thus, it should include sufficient information "to allow prison officials to take appropriate responsive measures." *See id.* (citation and internal quotation omitted).

A review of the group appeal, SQ-13-2801, filed on September 25, 2013, shows that plaintiffs claimed that on September 22, 2013, a non-defendant correctional officer discriminated against them when he prohibited Muslim prisoners from participating in congregational prayer of more than 4 prisoners during open dayroom hours at the same time that Christian prisoners were participating in their evening prayer. Saif'ullah Compl., Ex. A. Specifically, the group appeal stated:

> The present posture of this appeal concerns: (1) Blatant Religious Discrimination by
> Sergeant Dutton in violation of the First Amendment. (2) Imposition of Gang Tactics
> upon Muslims in West Block. Since being a resident of West Block the Muslims have

conducted congregational prayer on the Bayside at approximately the same time that the Christians conduct their nightly religious prayer on the Yardside. While conducting our prayer we are conscious not to block the walk way for the sake of security and we offer a short prayer which consist [sic] of no more that [sic] 10 minutes. On September 22, 2013 Sgt. Dutton gave the Muslims a direct order not to offer our prayer with more than four people in the prayer at a time. On the same day and at the same time the Christians were offering their nightly prayer with more than 25 people in their prayer circle without anything being said to them by Sgt. Dutton. This is blatant religious discrimination! To impose restrictions upon the Muslims without imposing the same restrictions upon other religions within West Block and within S.Q. is a deliberate act of religious discrimination in violation of the First Amended [sic] to the United States Constitution and constitutes a cause of action under the Civil Rights Acts pursuant to U.S.C.S. § 1983.

Saif'ullah Compl, Ex. A. In the "action requested" section, the appeal stated:

(1) That the Muslims in West Block are allowed offer [sic] congregational prayer without restrictions as the Christians and all other religions are allowed to worship. (2) That the Muslims are allowed to offer congregational prayer without restriction on the West Block Yard during Opening Unit at Night.

*Id.*

Plaintiffs' group appeal was granted at the third level of review, and referred to a Religious Review Committee. As a result of the Religious Review Committee's discussions, on June 3, 2014, Associate Warden Albritton issued an order providing a policy that no more than 15 inmates at a time may participate in Muslim congregational prayer for 6-8 minutes in the West Block open dayroom during the evening activity program, approximately around sunset.

In comparison, plaintiffs' federal complaint alleges that from June 28, 2014, until November 17, 2014, Muslim prisoners participated in noon and afternoon congregational prayers in the open dayroom without incident. On November 17, 2014, defendants told Saif'ullah to inform the other Muslim prisoners that large group noon and afternoon congregational prayers were not allowed in the open dayroom, but that congregational prayer was allowed between 7:30 p.m. and 9:00 p.m. Plaintiffs believe that the June 3, 2014 order authorized them to also engage in large group noon and afternoon congregational prayers in the open dayroom, and defendants' directive contradicted that order.

While it is possible to interpret plaintiffs' group appeal, SQ-13-2801, to include a global

complaint that Muslim prisoners wanted to have an unlimited number of unrestricted congregational prayers of more than four prisoners at a time in the open dayroom, regardless of the time of day, the court finds that such an interpretation is unreasonably broad. Plaintiffs' group appeal did not allege an inability to participate in a large group congregational prayer in the open dayroom at all times of the day and night. Nor did plaintiffs argue in their group appeal that other religious groups participated in large group congregational prayer outside of evening or sunset hours in the open dayroom. In fact, plaintiffs concede that they did not even begin offering large group noon and afternoon congregational prayers in the open dayroom until June 28, 2014 – after the June 3, 2014 order was issued. Because plaintiffs were not engaging in large group noon or afternoon congregational prayers in the open dayroom prior to June 28, 2014, the only "problem" to which the group appeal necessarily could have "alerted" prison officials was the inability to participate in a large group congregational prayer in the open dayroom during the sunset hours when Christian prisoners were permitted to do so.

In the group appeal's section asking inmates to explain the issue about which they are complaining, plaintiffs' group appeal in SQ-13-2801 specifies that Muslim prisoners are being discriminated against because they are not permitted to engage in congregational prayer in the open dayroom at the same time that Christian prisoners conduct their nightly religious prayer. It repeats that "on the same day and at the same time the Christians were offering their nightly prayer with more than 25 people in their prayer circle," the Muslim prisoners were the only group that was interrupted. Even liberally construing this group appeal, it did not alert prison officials to plaintiffs' current claims that Muslim prisoners wished to have noon and afternoon congregational prayer of more than 4 people in the open dayroom as well. While the group appeal did inform prison officials of plaintiffs' challenge to the prohibition of Muslim prisoners from engaging in a large group congregational prayer at sunset, it did not alert prison officials that Muslim prisoners wanted and were also being prevented from engaging in large group noon and afternoon congregational prayer in the open dayroom.

1   Thus, prison officials did not have a reasonable opportunity to address the issue or

2   facilitate a resolution.  That is, the group appeal did not give prison officials a "fair opportunity to

3   address the problem that will later form the basis of the lawsuit."  *Johnson*, 385 F.3d at 517; *see*

4   *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

5   In addition, plaintiffs specifically argue that the group appeal, SQ-13-2801, exhausted their

6   current claims based on the doctrine of continuing violations.  However, this doctrine typically

7   relates to issues of timeliness, not exhaustion.  *See e.g.*, *National Railroad Passenger Corp. v.*

8   *Morgan*, 536 U.S. 101, 105 (2002) (recognizing that the "continuing violations doctrine" allows a

9   court, in some instances, to consider alleged unlawful behavior that would otherwise be time-

10  barred); *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (stating that the "related acts"

11  continuing violation theory allows a plaintiff to seek relief for events outside of the limitations

12  period if a series of violations are related closely enough to constitute a continuing violation and

13  that one or more of the acts falls within the limitations period).

14  The Ninth Circuit has not applied the continuing violations doctrine to issues of exhaustion

15  in prisoner civil rights cases.  Several other circuits, however, have.  *See, e.g.*, *Turley v. Rednour*,

16  729 F.3d 645, 649-50 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file

17  multiple, successive grievances raising the same issue (such as prison conditions or policies) if the

18  objectionable condition is continuing."); *Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012) (per

19  curiam) (holding that a prisoner's 2005 exhausted grievance was sufficient to exhaust his 2007

20  claims based on a continuing violation when the 2005 grievance raised the identical issue);

21  *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (holding that a

22  prisoner was "not required to initiate another round of the administrative grievance process on the

23  exact same issue each time" an alleged deprivation of rights occurred"); *Howard v. Waide*, 534

24  F.3d 1227, 1244 (10th Cir. 2008) (after plaintiff had exhausted a grievance regarding harassment

25  and threats, he was not required to file a separate grievance for the same risks identified in the first

26  grievance); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) (stating that plaintiff was not

27  Case Nos. 15-CV-5600 LHK (PR), et al.
    ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING MOTION TO REVOKE
28  SAIF'ULLAH'S IN FORMA PAUPERIS STATUS; GRANTING MOTION FOR SUMMARY JUDGMENT

required to file separate grievances to "exhaust claims that arose from the same continuing failure to protect him from sexual assault."). Thus, according to these circuits, when a prisoner plaintiff grieves a continuing violation, he need not file "multiple, successive grievances raising the same issue," and can therefore satisfy his exhaustion requirement "once [the] prison has received notice of, and an opportunity to correct [the] problem." *Turley*, 729 F.3d at 650.

To understand the continuing violations theory, it is helpful to look at *Pouncil v. Tilton*, 704 F.3d 568 (9th Cir. 2012). Although *Pouncil* is a statute of limitations case, it addresses the concept of the continuing violations doctrine. In *Pouncil*, the Ninth Circuit clarified the process of analyzing whether a claim is part of a continuing violation or is a discrete act so as to determine when a cause of action accrues. *See id.* at 576-81; *compare Delaware State College v. Ricks*, 449 U.S. 250 (1980) (concluding that a college professor's challenge to the termination of his tenure accrued when he received a 1974 letter informing him of such termination at the end of the 1975 school year, and not when the actual termination occurred in 1975), *and Knox v. Davis*, 260 F.3d 1009, 1014 (9th Cir. 2001) (holding that an attorney's claim that her legal mail and visitation rights to prison inmates accrued when she received a letter informing her of such on January 20, 1996, and not when she continued to receive those denials up until she filed suit in 1997), *with National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (concluding that a plaintiff's claim against his employer for unlawful employment practices alleged discrete discriminatory acts, each of which started the clock for the statute of limitations), *and Cherosky v. Henderson*, 330 F3d. 1243 (9th Cir. 2003) (applying *Morgan*, and concluding that employees did not assert any discrete act that would have fallen within the statute of limitations). According to *Pouncil*, if the claim involves a "delayed, but inevitable, consequence," of a previous, uncorrected wrong, then it is part of a continuing violation. *See Pouncil*, 704 F.3d at 581. If, on the other hand, the claim involves an "independently wrongful, discrete act," then it is a separate, stand-alone claim. *See id.*

Here, even assuming that the continuing violations doctrine applies to exhaustion issues in

prisoner civil rights cases, the ten plaintiffs cannot take advantage of the doctrine to satisfy exhaustion in this case. This is not a continuing violation of plaintiffs' group appeal in SQ-13-2801, which alleged that Muslim prisoners were not allowed to congregate in groups of more than 4 at the same evening time that Christian prisoners were engaged in their nightly religious prayer. While the underlying claims arising from the November 17, 2014 incident are broadly related to the subject matter in group appeal SQ-13-2801, they are not the "delayed, but inevitable, consequence[s]" of a previous, uncorrected wrong. *See Pouncil*, 704 F.3d at 581. Rather, the group appeal, SQ-13-2801, was fully resolved when the prison corrected the issue by creating the June 3, 2014 order. In contrast here, the claims resulting from the November 17, 2014 incident are stand-alone claims because they involve "independently wrongful, discrete act[s]" after the original "wrong" was addressed. *See id.*

Accordingly, the court rejects plaintiffs' assertion that the group appeal, SQ-13-2801, exhausted their underlying claims. The ten plaintiffs provide no other evidence to show why there is something in their particular cases that made the existing and generally available administrative remedies effectively unavailable to them. *See Albino*, 747 F.3d at 1172. Because the ten plaintiffs have failed to meet their burden, defendants' motion for summary judgment is granted as to these ten plaintiffs for failing to exhaust their administrative remedies.

Nonetheless, the challenge to defendants' November 17, 2014 directive will proceed in *Saif'ullah v. Albritton*, Case No. 15-5600 LHK, as defendants did not argue that Saifu'llah did not exhaust his claims, and the court has denied defendants' motion for judgment on the pleadings as well as motion to revoke Saif'ullah's IFP status.

## CONCLUSION

Defendants' motion for judgment on the pleadings is DENIED.

As to Case. No. 15-CV-5600 LHK, defendants' motion to revoke Saif'ullah's IFP status is DENIED.

Defendants' motion for summary judgment for failure to exhaust is GRANTED. The

1    Clerk shall terminate all pending motions, enter judgment, and close the following cases:  Enver

2    Karafili, Case No. 15-CV-6315 LHK; Montshu Abdullah, Case No. 15-6316 LHK; Amir Shabazz,

3    Case No. 15-CV-6317 LHK; Abdullah Saddiq, Case No. 15-6318 LHK; Mujahid Ta'lib Din, Case

4    No. 15-6319 LHK; Andre Lamont Batten, Case No. 15-CV-6320 LHK; Hatim Fardan, Case No.

5    16-CV-0004 LHK; Abdul Aziz, Case No. 16-CV-0150 LHK; Anthony Bernard Smith, Jr., Case

6    No. 16-CV-0156 LHK; and Damian Mitchell, Case No. 16-CV-0157 LHK.

7          Within **sixty days** of the filing date of this order, defendants are directed to file a

8    comprehensive motion for summary judgment on the merits in *Saif'ullah v. Albritton*, Case. No.

9    15-CV-5600 LHK, or notify the court that they do not intend to do so.  If defendants file a motion

10   for summary judgment in this case, Saif'ullah shall file his opposition no later than **twenty-eight**

11   **(28) days** from the date defendants' motion is filed.  Defendants shall file a reply brief no later

12   than **fourteen (14) days** after Saif'ullah's opposition is filed.  The motion shall be deemed

13   submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the

14   court so orders at a later date.

15         All communications by Saif'ullah with the court must be served on defendants' counsel.

16   Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further

17   court order is required before the parties may conduct discovery.

18         It is Saif'ullah's responsibility to prosecute this case.  Saif'ullah must keep the court and

19   all parties informed of any change of address and must comply with the court's orders in a timely

20   fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant

21   to Federal Rule of Civil Procedure 41(b).

22         **IT IS SO ORDERED.**

23   Dated:    6/30/17                          _Lucy H. Koh_____

24                                              LUCY H. KOH
                                                United States District Judge

25

26

27   Case Nos. 15-CV-5600 LHK (PR), et al.
     ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING MOTION TO REVOKE
28   SAIF'ULLAH'S IN FORMA PAUPERIS STATUS; GRANTING MOTION FOR SUMMARY JUDGMENT