UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KHALIFAH E.D. SAIF'ULLAH,<br><br>Plaintiff,<br><br>v.<br><br>ASSOCIATE WARDEN S.R. ALBRITTON, et al.,<br><br>Defendants. | Case No. 15-CV-05600 LHK (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 51 |

Plaintiff Khalifah E.D. Saif'ullah, a California state prisoner proceeding *pro se*, filed a civil rights complaint under 42 U.S.C. § 1983. On August 29, 2017, defendants Associate Warden S.R. Albritton ("Albritton") and Correctional Lieutenant R. Kluger ("Kluger") filed a motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. For the reasons stated below, defendants' motion is granted.

## FACTUAL BACKGROUND

The following facts are taken in the light most favorable to plaintiff. According to the complaint, plaintiff is a practicing Muslim incarcerated at San Quentin State Prison ("SQSP") in the West Block. West Block is not a minimum security unit, but it houses prisoners with a

1    security rating of Level II. Kluger Decl. ¶ 3. A Level II security rating means that the prisoners

2    have independence to attend programming, classes, jobs, therapy, chapel, the recreational yard,

3    and other activities. Albritton Decl. ¶ 3. As an open unit, during the day from approximately

4    10:00 a.m. to 4:00 p.m., most West Block inmates are busy outside of the housing unit so inmates

5    are allowed in and out of the West Block to go to their jobs, their classes, the recreational yard, the

6    canteen, the cafeteria, etc. *Id.* ¶ 4.

7         As part of plaintiff's religious beliefs, plaintiff must pray five times daily at specified

8    times. Compl. ¶ 10. Plaintiff believes that he will receive at least 25 times more blessings during

9    a congregational prayer than during individual prayer and should engage in congregational prayer

10   when feasible. *Id.* ¶¶ 11, 23. SQSP had a rule that prevented SQSP Muslim inmates from offering

11   congregational prayer in groups of more than 4 inmates at a time. In fact, since at least 1983, there

12   has been a general policy against more than four inmates grouping together ("grouping policy") in

13   the housing units for security purposes. Albritton Decl. ¶ 6; Kluger Decl. ¶¶ 2, 9. The grouping

14   policy was implemented because larger groups of inmates in a small shared space in the housing

15   units can be intimidating to other inmates, can overwhelm officers in the event of an emergency,

16   and can block access to showers and exits. Albritton Decl. ¶ 6. Large groups also make

17   monitoring difficult, and can make it easier for inmates to pass contraband. *Id.*

18        In February 2013, plaintiff moved to SQSP West Block and began offering congregational

19   prayer to approximately 15 to 30 Muslim prisoners at a time.[1] Compl. ¶ 12. On September 22,

20   2013, non-defendant Sergeant Dutton prohibited plaintiff from offering congregational prayer

21   during "open dayroom"[2] consisting of more than 4 prisoners. *Id.* ¶ 14. Open dayroom is held

22

23   _____

24   [1]   The court notes that plaintiff offers inconsistent dates of February 2013, June 3, 2014, and June
     28, 2014 as the date upon which he began offering congregational noon, afternoon, and evening
     prayers. Compl. ¶ 12, ¶ 18, Dkt. No. 1 at 49.

25
     [2]   It is unclear exactly what "open dayroom" is, but plaintiff describes it as a time "when all
26   prisoners are allowed to participate in recreational activities." Compl. at ¶¶ 5, 14. Defendants
     assert that there is no "dayroom" for recreation and entertainment, but there is a shared
27   "Broadway" on either side of the cellblock. Kluger Decl. ¶ 3; Albritton Decl. ¶ 3.

     Case No. 15-CV-05600 LHK (PR)
28   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

from 12:30 p.m. – 3:45 p.m. and 7:30 p.m. – 9:00 p.m. *Id.* Plaintiff alleged that a group of 25 Christian prisoners were offering congregational prayer at the same time but that group was not interrupted. *Id.*

Plaintiff and other Muslim prisoners filed a group administrative appeal, SQ-13-2801, complaining that they were being discriminated against based on their religion. At the first level of review, the response denied the appeal, but noted that "Muslims are entitled to congregational prayer in their designated worship area (i.e., church)." Dkt. No. 1 at 27. At the second level of review, the prison denied plaintiffs' request to participate in congregational prayer of more than 4 prisoners during open dayroom, but granted "his request to practice his religious faith without discrimination; practice his faith in designated areas of the chapel, his assigned cell, or any other appropriate dayroom area where he can reasonably practice his faith." *Id.* at 29. At the third level of review, the plaintiffs' group appeal was granted, and plaintiff's grievance was referred to the Religious Review Committee ("RRC"). Based on the RRC's discussion, on June 3, 2014, Albritton issued a religious accommodation order ("June 3, 2014 order"), which specifically authorized: (1) "Faith prayer will be allowed to occur in the West Block during the evening activity program, approximately at sunset"; (2) "No more than 15-individuals will be allowed to participate in these sessions"; and (3) "Prayer will last no longer than 6 to 8 minutes." *Id.* at 39.

On November 15 or 16, 2014, Kluger received a phone call from a third shift officer performing a cell search on the third tier at West Block. Kluger Decl. ¶ 5. The officer reported to Kluger that the officer could hear the Muslim evening prayer from the third tier, that the large group exceeded fifteen prisoners, and the prisoners were being loud and disruptive and were "posting security."[3] *Id.*

Plaintiff had been offering noon, afternoon, and evening congregational prayers daily

---

[3] "Posting security" means standing nearby and keeping watch, which is not permitted for security reasons and usually indicates ongoing criminal activity. Kluger Decl. ¶ 5.

without incident since at the latest June 2014 until November 17, 2014.[4]  Compl. ¶ 18; Dkt. No. 1 at 49.  On November 17, 2014, Albritton and Kluger informed plaintiff that plaintiff and the other Muslim prisoners were not authorized to conduct large group noon and afternoon congregational prayers consisting of more than four inmates at a time in the open dayroom.  Dkt. No. 1 at 49; Kluger Decl. ¶ 5.  The court will hereinafter refer to any congregational prayer group consisting of more than four prisoners as "large group".  Defendants told plaintiff that the June 3, 2014 order only permitted Muslim prisoners to participate in large group evening congregational prayer during open dayroom from 7:30 p.m. to 9:00 p.m., and did not authorize large group noon or afternoon congregational prayers during open dayroom.   Dkt. No. 1 at 49.

Plaintiff asserts that Kluger had previously seen plaintiff offering large group noon and afternoon congregational prayers, but because Kluger had disagreed with the RRC's action granting Muslim prisoners an accommodation, Kluger called Albritton and had Albritton inform plaintiff that large group noon and afternoon congregational prayers were no longer allowed.[5] Compl. ¶ 22.  On the other hand, Kluger asserts that because Kluger worked during the third shift, Kluger was not even in West Block during the times the Muslim prisoners would have performed their noon and afternoon congregational prayers.  Kluger Decl. ¶ 5.

On November 18, 2014, plaintiff filed a grievance, SQ-14-2903.  Compl. ¶ 19.  In SQ-14-2903, plaintiff specifically challenged defendants' statements that large group noon and afternoon congregational prayers in the open dayroom were prohibited.  Plaintiff pursued this grievance up to the third level of review.  *Id.* ¶ 20.  On August 26, 2015, the third level of review response

---

[4]   As stated above, plaintiff offers inconsistent dates of February 2013, June 3, 2014, and June 28, 2014 as the date upon which he began offering congregational noon, afternoon, and evening prayers.  Compl. ¶ 12, ¶ 18, Dkt. No. 1 at 49.  However, plaintiff does not specify whether all of the congregational prayers exceeded four inmates at a time.

[5]   In fact, neither the RRC nor the June 3, 2014 modification order authorized large group noon or afternoon congregational prayer.  The June 3, 2014 modification order specifically only permitted evening congregational prayer of up to 15 prisoners at a time once a day to last no longer than 6-8 minutes.  Compl., Ex. B.

granted plaintiff's grievance and ordered the Warden to conduct another RRC.  *Id.*  Plaintiff alleges that third level of review response ordered modification of the June 3, 2014 order "to accommodate plaintiff's religious obligation to offer congregational prayer five times a day, especially during open dayroom."[6]  *Id.*

Plaintiff claims that Albritton failed to comply with the third level of review because Albritton did not include plaintiff in the RRC meeting and "reversed" the June 3, 2014 order.  Compl. ¶ 21.  Plaintiff alleges that the RRC ultimately decided to reduce the number of Muslim prisoners for large group congregational prayers to no more than five, while the Jewish and Christian prisoners were permitted to offer an unlimited amount of congregational prayers with as many prisoners as they would like during open dayroom.[7]  *Id.*

The court found that, liberally construing the complaints, plaintiff stated cognizable claims that defendants violated the First Amendment Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment Establishment Clause, the First Amendment right against retaliation, and the Fourteenth Amendment right to equal protection.

## ANALYSIS

In essence, plaintiff's claims are largely based on his misinterpretation of the June 3, 2014 order.  According to the complaint, plaintiff believes that the June 3, 2014 order authorizing large group evening congregational prayer during open dayroom also authorized large group noon and afternoon congregational prayers during open dayroom.  However, the June 3, 2014 order plainly specifies that an exception from the normal grouping policy would be made in that congregational prayer would be permitted during open dayroom approximately at sunset, consisting of no more

---

[6]  The court notes that plaintiff cites to Exhibit D in support of this assertion.  However, Exhibit D, which includes a copy of the response at the third level of review does not actually state what plaintiff asserts.  The third level of review response merely ordered the RRC to convene to review plaintiff's request.  There is no indication that the response required accommodation of plaintiff's request to be permitted to offer large group congregational prayer five times a day during open dayroom.

[7] Unfortunately, neither party has provided a copy of the RRC's decision or any resulting modification order.

than 15 prisoners at a time, and last no longer than 6-8 minutes. Dkt. No. 1 at 39. Based on plaintiff's misunderstanding of the parameters of the June 3, 2014 order, plaintiff appears to be alleging that defendants' statement to plaintiff on November 17, 2014 that large group noon and afternoon congregational prayer during open dayroom was not permitted was contrary to the June 3, 2014 order, and violated plaintiff's constitutional rights.

I.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts, and "factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby, Inc.*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## II.    Free Exercise

Plaintiff alleges that defendants' actions on November 17, 2014 violated plaintiff's First Amendment right to the free exercise of his religion. Specifically, plaintiff claims that defendants substantially burdened plaintiff's right to exercise his religion by denying plaintiff the opportunity for large group congregational prayer during open dayroom; by forcing plaintiff to discontinue offering noon and afternoon congregational prayer during open dayroom; and by violating the June 3, 2014 order. Compl. ¶ 27. Defendants argue that the impact on plaintiff's right to the free exercise of his religion did not result in a substantial burden. Even if it did, argue defendants, their actions were reasonably related to legitimate penological interests. And, finally, in the alternative, defendants argue that they are entitled to qualified immunity. The court addresses each argument in turn.

### A.    Substantial burden

In order to establish a free exercise violation, a prisoner must show that a defendant substantially burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008); *see, e.g.*, *Bolds v. Cavazos*, No. 14-15176, 599 Fed. Appx. 307 (9th Cir. March 20, 2015) (unpublished memorandum disposition) (dismissing Free Exercise Clause claim because inmate failed to show that confiscation of television "substantially burdened" the practice of religion). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an

adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015).

The evidence is undisputed that on November 17, 2014, defendants informed plaintiff that the June 3, 2014 order did not permit plaintiff and the other Muslim prisoners to engage in large group noon and afternoon congregational prayer during open dayroom. Kluger Decl. ¶ 5; Albritton Decl. ¶ 10. Defendants reminded plaintiff that the June 3, 2014 order authorized only one large group evening congregational prayer per day during open dayroom with a maximum of 15 prisoners at a time. Kluger Decl. ¶ 5; Dkt. No. 1 at 49. There is no indication that plaintiff was engaged in any congregational prayer at the time defendants spoke with him.

Here, plaintiff began offering large group noon and afternoon congregational prayer during open dayroom in West Block since, at the latest, June 2014. Plaintiff has declared that he sincerely believes that as a Muslim, he is obligated to pray in congregation as often as possible, and that praying in congregation results in at least 25 times more blessings than praying alone. There is no evidence that defendants prevented plaintiff from praying individually or in a smaller congregation for his noon and afternoon prayers during open dayroom. There is no evidence that either defendant interrupted or stopped an ongoing congregational prayer. Further, the evidence shows that plaintiff could engage in congregational prayer with up to four prisoners at a time during open dayroom. Albritton Decl. ¶ 14. In addition, Muslim Chaplain Houssain ("Houssain") worked at SQSP Tuesdays through Saturdays and regularly offered congregational prayer services in the Muslim chapel for noon and afternoon congregational prayers. Hossain Decl. ¶ 2. Plaintiff regularly attended religious services at the Muslim chapel both before and after November 2014. *Id.* ¶ 4.

The court finds that there is an absence of evidence that defendants' reminder to plaintiff on November 17, 2014 that plaintiff was not permitted to engage in large group noon and afternoon congregational prayer during open dayroom was a "substantial burden" on plaintiff's free exercise of religion. It did not coerce plaintiff to forego his religious beliefs, or engage in

conduct that violated those beliefs. *See Jones*, 791 F.3d at 1031-32; *see, e.g.*, *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (affirming summary judgment on claim that defendant violated Free Exercise Clause by interrupting inmate's prayer time no more than 18 times over the course of 2 months because it was "relatively short-term and sporadic," and not a "substantial burden"); *Howard v. Skolnik*, Case No. 09-15382, 2010 WL 1253458, **1 (9th Cir. March 30, 2010) (unpublished memorandum disposition) (affirming summary judgment on "First Amendment claim concerning two alleged incidents where prison personnel interfered with prisoner's fasting because there was no genuine issue as to whether a substantial burden was placed on Howard's free exercise of religion"); *Chaparro v. Ducart*, Case No. 14-CV-4955 LHK, 2016 WL 491635, at *5 (N.D. Cal. Feb. 9, 2016) (granting defendants' motion for summary judgment because four missed chapel services did not amount to a substantial burden on plaintiff's right to the free exercise of religion), *aff'd by* Case No. 16-15693, 695 Fed. Appx. 254 (9th Cir. Aug. 14, 2017) (unpublished memorandum disposition).

Accordingly, defendants are entitled to summary judgment because there is no genuine issue of material fact that defendants' reminder to plaintiff that large group noon and afternoon congregational prayer in the open dayroom was not authorized was not a substantial burden on plaintiff's free exercise of religion.

B.    Reasonably related to legitimate penological interests

Alternatively, even if defendants' statements to plaintiff on November 17, 2014, substantially burdened plaintiff's free exercise of religion, defendants are still entitled to summary judgment because there is no genuine issue of material fact that their actions were reasonably related to legitimate penological interests at SQSP.

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Allegations of a denial of an opportunity to practice religion "must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest

put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation)." *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008) (citing *Turner*, 482 U.S. at 89-90); *see Beard v. Banks*, 548 U.S. 521, 532-33 (2006) (noting that application of the *Turner* factors does not turn on balancing the factors, but on determining whether the defendants show a reasonable relation, as opposed to merely a logical relation).

### 1. Valid, rational connection

First, defendants assert that there was a valid, rational connection between defendants' reminder to plaintiff of the parameters of the June 3, 2014 order and a legitimate governmental interest. Legitimate penological interests include "the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners." *Procunier v. Martinez*, 416 U.S. 396, 412 (1974) (footnote omitted), *limited by Thornburgh v. Abbott*, 490 U.S. 401 (1989). In determining whether there is a valid, rational connection to legitimate penological interests, the initial burden is on defendants to put forth a "common sense" or intuitive connection between their policy and a legitimate penological interest. *See Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999). When an inmate does not present enough evidence to refute this common sense connection between the prison regulation and the objective, the court is to presume the governmental objective is legitimate and neutral and *Turner*'s first prong is satisfied. *See Ashker v. California Dept. of Corrections*, 350 F.3d 917, 923-24 (9th Cir. 2003); *Frost*, 197 F.3d at 357. On the other hand, when an inmate presents evidence that refutes a common sense connection between a legitimate objective and the prison regulation, the state then must present enough counter-evidence to show that the connection is not so "remote as to render the policy arbitrary or irrational." *Ashker*, 350 F.3d at 923; *Frost*, 197 F.3d at 357.

Here, defendants argue that enforcing the June 3, 2014 order by reminding plaintiff that the

June 3, 2014 order did not include large group noon and afternoon congregational prayer during open dayroom has a common sense connection. The original grouping policy allowed no more than four inmates to gather at a time due to safety and security concerns. Albritton Decl. ¶ 6. Specifically, this policy was intended to limit gang and criminal activity because larger groupings in shared spaces of the housing units are "intimidating" to other inmates, can overwhelm officers in the event of an emergency, and can block foot traffic and access to showers and exits. *Id.* Also, larger groupings make monitoring inmates difficult. *Id.* The June 3, 2014 order was an exception to the general rule, created to accommodate Muslim prisoners by allowing a group of up to 15 prisoners to engage in a 6-8 minute evening congregational prayer once programming at the Muslim chapel had ended. *Id.* ¶ 7. In contrast, on most days, the Muslim chapel was open for large group noon and afternoon congregational prayers, Houssain Decl. ¶¶ 2, 4, and thus could perform large group noon and afternoon congregational prayers in the Muslim chapel.

Defendants' explanation is legitimate and passes the "common sense" standard. *See Frost*, 197 F.3d at 357. The logical connection between defendants' actions and the stated policy reason is not so remote as to render it arbitrary or irrational. *See Turner*, 482 U.S. at 89-90. In sum, defendants have shown that a "common sense" connection between their actions in reminding plaintiff of the grouping policy and the limitation of the June 3, 2014 modification order and their stated legitimate penological interests was reasonable. *See Frost*, 197 F.3d at 355 ("[A]s long as it is plausible that prison officials believed the policy would further a legitimate objective, the governmental defendant should prevail on *Turner*'s first prong.").

In response, plaintiff offers no evidence to refute defendants' stated "common sense" connection. The court finds that defendants have satisfied the first *Turner* factor.

        2.    <u>Alternative Means</u>

Under the second *Turner* factor – the availability of alternatives – "[t]he relevant inquiry . . . is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, [the court must] determine whether the inmates have been denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993)

(citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987)). "Also relevant to the evaluation of the second factor is a distinction *O'Lone* had no occasion to make: the distinction between a religious practice which is a positive expression of belief and a religious commandment which the believer may not violate at peril of his [or her] soul." *Ward*, 1 F.3d at 878; *compare id.* (concluding that where prison officials have deprived an Orthodox Jewish prisoner of a kosher diet, a rabbi, and religious services, the second *Turner* factor weighs in the prisoner's favor), *with id.* at 880 (concluding that a prisoner's request not to be transported on the Sabbath was not reasonable under second *Turner* factor because prisoner had many opportunities to observe the Sabbath).

Defendants argue that plaintiff had alternative means of engaging in religious expression. The evidence is undisputed that plaintiff regularly attended prayer services at the Muslim chapel before and after November 17, 2014. Hossain Decl. ¶ 4. From Tuesdays through Saturdays, Chaplain Houssain worked at SQSP and regularly offered congregational prayer services for noon and afternoon prayers. *Id.* ¶ 2. For the days upon which Chaplain Houssain was not working at SQSP, the evidence is undisputed that plaintiff could engage in noon and afternoon congregational prayers during open dayroom in a group of up to four prisoners, or that plaintiff could pray individually.

Thus, there are no genuine issues in dispute regarding whether plaintiff had an alternative means of religious expression, nor is there any evidence which shows plaintiff was "denied all means of religious expression." *Ward*, 1 F.3d at 877; *see also O'Lone*, 482 U.S. at 352 (holding that the second *Turner* factor is satisfied if a prison allows prayer and discussion, access to an imam, and observance of Ramadan, even if inmates could not attend a weekly religious service).

Thus, the second *Turner* factor weighs in favor of defendants.

### 3. Impact on others

"A third consideration [to determine whether a challenged policy is reasonable] is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. "When

accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials."

Here, however, defendants do not provide a specific assessment regarding the impact that an accommodation would have on the prison. *See Shakur*, 514 F.3d at 887 (noting that in order to prevail on the third *Turner* factor, the prison should provide evidence that the prison actually looked into or studied the effects that an accommodation would have on operating expenses). Thus, this third *Turner* factor does not support a reasonable relation between the defendants' actions on November 17, 2014 and legitimate penological interests.

### 4. Presence of ready alternatives

Under the fourth and final *Turner* factor, whether the regulation is an "exaggerated response" to the prison's concerns, the prisoner must show there are "obvious, easy alternatives" to the regulation that "fully accommodate the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 90-91. The burden is on the plaintiff to show that there are obvious and easy alternatives to the challenged policy. *See Mauro v. Arpaio*, 188 F.3d 1054, 1062 (9th Cir. 1999); *Turner*, 482 U.S. at 90-91 ("if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."). "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 91. Instead, the proper inquiry is "whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." *Overton v. Bazzetta*, 539 U.S. 126, 135-36 (2003).

Plaintiff does not suggest an obvious or easy alternative to defendants' actions. The undisputed evidence shows that defendants reminded plaintiff and the other Muslim prisoners that the June 3, 2014 order only allowed large group evening congregational prayers during open

dayroom, and did not grant an exception for large group noon and afternoon congregational prayers during open dayroom. Plaintiff has not shown or argued that there existed an alternative with de minimis costs to valid penological interests. Thus, the fourth *Turner* factor weighs in favor of defendants.

In addition, the test of whether the defendants' actions were reasonably related to a legitimate penological interest does not require "balancing these [*Turner*] factors, but rather determining whether [defendants show] more than simply a logical relation, that is, whether [they] show] a reasonable relation." *Beard*, 548 U.S. at 533. Considering the *Turner* factors here, the court concludes that defendants' reminder to plaintiff of the limitations of the June 3, 2014 order was reasonably related to legitimate penological interests.

Plaintiff has not provided any evidence to show that defendants' actions on November 17, 2014 was unreasonable. Because plaintiff has failed to provide sufficient evidence of a First Amendment violation for a reasonable jury to return a verdict in his favor, defendants' motion for summary judgment is granted.

C.     Qualified immunity

Alternatively, defendants also argue that they are entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Regarding the first prong, the threshold question must be, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of

the case, not as a broad general proposition. *Id.* at 202. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*

Here, the law was clearly established that a prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone*, 482 U.S. at 349. "[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (citations omitted). "[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Moreover, the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). To do so, a court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the total factual circumstances surrounding the alleged violation. *See Watkins v. City of Oakland, California*, 145 F.3d 1087, 1092-93 (9th Cir. 1998). Such specificity does not mean qualified immunity exists "unless the very action in question has previously been held unlawful," but does require that "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

With these principles in mind, the constitutional question to be addressed here is not the general proposition espoused in *O'Lone*, but a more narrow one: whether a Muslim prisoner's right to free exercise is denied when the prison prohibits large group noon and afternoon congregational prayers during open dayroom. *See, e.g.*, *May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997) (recognizing *O'Lone* as establishing that prisoners retained protections of the free exercise clause, but defining the right as whether the prison's hair search procedure violated prisoners' right to free exercise of religion).

The plaintiff bears the burden of proving the existence of a "clearly established" right at

the time of the allegedly impermissible conduct. *See Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). Here, plaintiff has not done so.

The court has conducted a search for cases discussing whether prison officials violate the Free Exercise Clause when they prohibit inmates from engaging in large group congregational prayer during open dayroom, and found no applicable United States Supreme Court or Ninth Circuit cases. *See Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court may look to all available decisional law, including the law of other circuits and district courts. *See id.*; *Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015) (only in absence of decisional authority by the U.S. Supreme Court or Ninth Circuit are other sources of decisional law, such as out-of-circuit cases, considered).

Though there are a handful of out-of-circuit cases that have found complete bans of congregational prayers to be unconstitutional, the court has not uncovered any cases that have found a prohibition of congregational prayers in a prison's open dayroom to be unconstitutional. *See, e.g.*, *Williams v. Bragg*, No. EP-11-CV-475-PRM, 2012 WL 12878177, at *6-*7 (W.D. Tex. Aug. 31, 2012) (granting summary judgment to defendants and concluding that two isolated incidents, which generally do not support a First Amendment claim, of cancelling Al-Jumu'ah congregational prayer did not violate plaintiff's free exercise claim), *aff'd by* No. 12-50965, 537 Fed. Appx. 468 (5th Cir. July 29, 2013) (unpublished memorandum disposition); *Mitchell v. Wiley*, No. 06-cv-00547-WYD-BNB, 2009 WL 900047 (D. Colo. Jan. 16, 2009) (granting summary judgment to defendants and concluding that prohibiting congregational prayer of more than two prisoners did not violate plaintiff's right to free exercise); *Williams v. Jabe*, No. 7:08cv00061, 2008 WL 5427766, at *3 (W.D. Va. Dec. 31, 2008) (granting summary judgment to defendants and concluding that denying Muslim prisoners congregational prayer after Ramadan evening meals did not violate plaintiff's right to free exercise), *aff'd by* No. 09-6099, 339 Fed. Appx. 317 (4th Cir. July 29, 2009) (unpublished memorandum disposition); *Muhammad v. Klotz*, 36 F. Supp. 2d 240, 245 (E.D. Pa. Jan. 28, 1999) (granting summary judgment to defendants and

concluding that denying Muslim prisoners the ability to engage in all congregational prayers except one daily evening congregational prayer did not violate plaintiff's right to free exercise).

Based on the lack of clear case law establishing that the Free Exercise Clause prohibits prison officials from disallowing large group noon and afternoon congregational prayers to be held during open dayroom, the court concludes that plaintiff's First Amendment right was not clearly established here. In sum, the court is unable to find any authority that would have reasonably placed defendants on notice that prohibiting plaintiff from engaging in large group noon and afternoon congregational prayer during open dayroom when plaintiff could engage in such activity most days in the Muslim chapel and could also engage in smaller congregational prayer or individually during open dayroom would violate the First Amendment. Accordingly, defendants are entitled to qualified immunity on plaintiff's free exercise of religion claim.

Defendants' motion for summary judgment on plaintiff's free exercise of religion claim is GRANTED.

III.   RLUIPA

Plaintiff claims that defendants' actions violated the RLUIPA. Specifically, plaintiff alleges that defendants' refusal to honor the June 3, 2014 order allowing plaintiff "and all SQSP Muslim prisoners to participate in congregational prayer imposed a substantial burden on plaintiff's exercise of religion." Compl. ¶ 48.

Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Defendants argue that plaintiff's RLUIPA claim fails because plaintiff has not demonstrated a "substantial burden." "RLUIPA does not define 'substantial burden,' but [the

Case No. 15-CV-05600 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124-25 (9th Cir. 2013) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The RLUIPA substantial burden test is analyzed within the same Free Exercise Clause framework. *See Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (citing *Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006)). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hartmann*, 707 F.3d at 1124-25 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

Here, the court has already determined that the plaintiff's allegations are insufficient to show a substantial burden in the First Amendment context. Based on that finding, the court concludes that plaintiff's RLUIPA claim cannot survive summary judgment.

In addition, plaintiff's claim for money damages against defendants must be dismissed. RLUIPA does not authorize suits against state actors, including prison officials, acting in their individual capacity. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (agreeing with other circuits addressing this issue). Claims may only be brought against such defendants in their official or governmental capacity. *Id.* However, the availability of money damages from state officials sued in their official capacity turns on whether the State has waived its Eleventh Amendment immunity from such suits, or congress has abrogated that immunity under its power to enforce the Fourteenth Amendment. *See Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1112 (9th Cir. 2010). The Ninth Circuit has held that California has not waived, and Congress has not abrogated, state immunity with respect to monetary damages claims under RLUIPA. *Id.* at 1112-14. Consequently, RLUIPA does not authorize money damages against state officials, whether

United States District Court
Northern District of California

1    sued in their official or individual capacities.  *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir.

2    2015).  Thus, plaintiff's RLUIPA claim for money damages must be dismissed.

3            Finally, plaintiff also seeks injunctive relief.  Defendants argue that plaintiff's RLUIPA

4    claim for injunctive relief is moot because plaintiff's only challenge concerned defendants'

5    November 17, 2014 reminder that plaintiff and the Muslim prisoners were not authorized to

6    conduct large group noon and afternoon congregational prayers during open dayroom.  The

7    evidence is undisputed that SQSP now allows congregations in groups of up to eight inmates

8    during any free time in both the housing units as well as the recreational yard for any purpose, as

9    long as the inmates are not disruptive, engaging in forbidden activities, and do not otherwise cause

10   safety or security concerns.  Albritton Decl. ¶ 9.  Case law is clear that "[p]ast exposure to illegal

11   conduct does not in itself show a present case or controversy regarding injunctive relief, however,

12   if unaccompanied by any continuing, present adverse effects."  Thus, because plaintiff does not

13   allege that there is an ongoing RLUIPA violation, plaintiff has no basis for injunctive relief.  *See*

14   *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (injunctive relief is only available if there is a real

15   or immediate threat that the plaintiff will be wronged).  Plaintiff's RLUIPA claim for injunctive

16   relief must be dismissed as moot.

17           For the above stated reasons, defendants' motion for summary judgment on plaintiff's

18   RLUIPA is granted.

19   IV.     Establishment Clause

20           Plaintiff alleges that defendants' actions on November 17, 2014 violated the Establishment

21   Clause by favoring particular religious denominations over plaintiff's religion of Islam.  Compl. ¶

22   30.  Plaintiff claims that defendants denied access to large group congregational prayer during

23   open dayroom to plaintiff while allowing large group congregational prayer to inmates of other

24   religions without restriction as to time or number of inmates.  *Id.* ¶ 32.  Defendants argue that

25   plaintiff has not alleged facts to support an Establishment Clause claim.

26           The U.S. Supreme Court has interpreted the Establishment Clause to mean that the

27

government may not promote or affiliate itself with any religious doctrine or organization and may not discriminate among persons on the basis of their religious beliefs and practices. *See County of Allegheny v. ACLU*, 492 U.S. 573, 590 (1989), *abrogated on other grounds by Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014). For the purpose of an Establishment Clause violation, a state policy need not be formal, written or approved by an official body to qualify as state sponsorship of religion; however, the actions complained of must be sufficiently imbued with the state's authority to constitute state endorsement of religion. *See Canell v. Lightner*, 143 F.3d 1210, 1214-15 (9th Cir. 1998) (correctional officer's evangelizing activities did not constitute state endorsement of religion because activities were not sanctioned in any way by policy of correctional facility or staff and were short-term and sporadic). A state regulation or practice "does not violate the Establishment Clause if (1) the enactment has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 762 (9th Cir. 1981) (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)).

The Establishment Clause of the First Amendment "prohibits the enactment of a law or official policy that 'establishes a religion or religious faith, or tends to do so.'" *Newdow v. Lefevre*, 598 F.3d 638, 643 (9th Cir. 2010) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). The clause applies to official condonement of a particular religion or religious belief, and to official disapproval or hostility towards religion. *American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1120-21 (9th Cir. 2002) (quotation marks and citations omitted).

Here, plaintiff argues that the grouping policy was applied only to Muslim prisoners to prevent Muslim prisoners from engaging in large group noon and afternoon congregational prayer in the open dayroom. The grouping policy on its face clearly does not violate the Establishment Clause. Specifically, the grouping policy is secular in purpose, its primary effect does not advance nor inhibit religion, and it does not foster an excessive entanglement with religion. *See Collins*, 644 F.2d at 762. Plaintiff challenged this grouping policy in 2013 through the administrative

grievance process, and was successfully granted a limited exception to the grouping policy.  The successful grievance resulted in the June 3, 2014 order permitting a group of up to 15 Muslim prisoners to perform evening congregational prayer during open dayroom.

Plaintiff does not set forth any evidence to support his bald assertion that the prison or the defendants applied the grouping policy only to Muslim prisoners while allowing inmates of other faiths to congregate in groups of more than four during open dayroom.  There is no evidence from which it can be inferred that there was any "official disapproval or hostility" toward Islam.  *See American Family Ass'n Inc.*, 277  F.3d at 1120-21.  Case law is clear that there must be evidence that the State endorsed or ratified defendants' actions.  *See Canell*, 143 F.3d at 1214.  Here, not only is there no evidence that the state endorsed or ratified defendants' actions, but there is also no evidence that defendants' actions favored other religions by allowing other religious groups to congregate in groups of more than four inmates at a time.

Although plaintiff makes general allegations that no other religious groups were similarly restricted to the grouping policy, plaintiff does not assert that defendants knew about these other groups or otherwise applied the grouping policy dissimilarly to any other group.  Rather, the evidence shows that on November 17, 2014, defendants reminded plaintiff and the other Muslim prisoners that the June 3, 2014 order only permitted one large group evening congregational prayer each day, and it did not include large group noon and afternoon congregational prayer. There is no evidence suggesting that defendants knew that more than four non-Muslim prisoners were grouping together, or that defendants failed to enforce the limiting grouping policy to those non-Muslim prisoners.

At this juncture, plaintiff cannot merely rely on unsupported assertions to survive summary judgment.  He "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).  Because plaintiff has not, defendants are entitled to summary judgment as a matter of law.

Case No. 15-CV-05600 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Accordingly, defendants' motion for summary judgment is GRANTED as to plaintiff's Establishment Clause claim.

## V.    Retaliation

Plaintiff claims that defendants' reminder to plaintiff on November 17, 2014 that large group noon and afternoon congregational prayers were not allowed during open dayroom amounted to retaliation against plaintiff. Specifically, plaintiff asserts that defendants took an adverse action against plaintiff when they told plaintiff that large group noon and afternoon congregational prayer during open dayroom was not allowed. In the complaint, plaintiff claims that defendants did so because plaintiff was exercising his right to practice his religion freely. Compl. ¶ 35. In his opposition, plaintiff also claims that defendants did so because plaintiff had participated in a group appeal in 2013 that resulted in the June 3, 2014 order.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Harm that "would chill a 'person of ordinary firmness' from complaining" is sufficient to find an "adverse action." *Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016) (quoting *Rhodes*, 408 F.3d at 569) (placement in administrative segregation or even threat to do so on its own amounts to adverse action satisfying the first element). The mere threat of harm can be a sufficiently adverse action to support a retaliation claim. *Id.* at 688-89.

Here, plaintiff has not demonstrated that defendants took any adverse action against him. There is no evidence that plaintiff was in the middle of an individual or congregational prayer when defendants spoke with him. Nor has plaintiff alleged that defendants threatened him in any way or otherwise caused him harm. Defendants' reminder to plaintiff that the June 3, 2014 order did not permit plaintiff to engage in large group noon or afternoon congregational prayers during

open dayroom was a factually accurate description of the limitations of the June 3, 2014 order. Defendants' reminder to plaintiff is not the type of harm that "would chill a 'person of ordinary firmness' from complaining." *Id.* at 691. Without evidence to support a finding of adverse action, plaintiff's retaliation claim fails as a matter of law.

In addition, plaintiff argues that defendants' actions constituted retaliation for plaintiff's exercise of his right to practice his religion or his right to file a grievance. The court addresses each in turn.

A.     Protected religious conduct

With respect to plaintiff's argument that defendants retaliated against plaintiff because plaintiff was exercising his right to practice his religion freely, the court finds plaintiff has not met his burden of pleading or proving the absence of a legitimate correctional goal for defendants' conduct. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). In addition, even if plaintiff had met his burden, defendants have shown by a preponderance of the evidence that their reminder to plaintiff of the grouping policy and the contents of the June 3, 2014 order was narrowly tailored to serve a legitimate penological purpose. Plaintiff has not demonstrated a genuine issue of material fact as to whether defendants' actions reasonably advanced a legitimate correctional goal.

The court applies the four-factor test from *Turner v. Safley*, 482 U.S. 78 (1978), to determine whether the proferred legitimate penological interest is reasonably related to a regulation or action which infringes on a prisoner's constitutional rights even in a retaliation analysis. *See Brodheim v. Cry*, 584 F.3d 1262, 1272 (9th Cir. 2009). Because the court has already applied the *Turner* standard to plaintiff's free exercise claim, and determined that defendants' actions on November 17, 2014 were reasonably related to the prison's grouping policy to promote the safety and security of the prison, plaintiff cannot succeed on his retaliation claim.

B.     Protected conduct of filing a grievance

To the extent plaintiff argues that defendants retaliated against plaintiff because plaintiff and the Muslim prisoners were granted the June 3, 2014 order, the court finds that plaintiff cannot

succeed on this claim.[8]

First, there is an absence of evidence that defendants took an adverse action "because" of plaintiff's protected conduct. The element of causation requires a showing that the prison official intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for some other reason. *Shepard v. Quillen*, 840 F.3d 686, 689-91 (9th Cir. 2016). That is, plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [defendants'] intent" in reminding plaintiff that he could not engage in large group noon and afternoon congregational prayer in the open dayroom. *Id.* at 689 (quoting *Brodheim*, 584 F.3d at 1271); *see Hartman v. Moore*, 547 U.S. 250, 259 (2006) (explaining that a section 1983 plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action").

Evidence probative of retaliatory animus includes proximity in time between the protected conduct and the alleged adverse action, a prison official's expressed opposition to the speech, and that a prison official's proffered reason for the adverse action was false or pretextual. *See id.* at 690. On the other hand, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Here, plaintiff alleges that on November 17, 2014, defendants told plaintiff that Muslim prisoners were not allowed to engage in large group noon and afternoon congregational prayer during open dayroom because defendants were unhappy that plaintiff and the Muslim prisoners

---

[8] Plaintiff also raises for the first time in his opposition that defendants retaliated against him because another Muslim prisoner, Anthony Smith, filed an unrelated grievance at some unknown time against Kluger concerning the wearing of religious attire. Opp. at 7. Plaintiff has not provided any evidence that defendants knew about this unrelated grievance, or that defendants' actions were "because of" this unrelated grievance. Thus, this unsupported assertion cannot survive summary judgment. *See Wood*, 753 F.3d at 904 (recognizing that mere speculation that defendants acted out of retaliation is insufficient to survive summary judgment).

Case No. 15-CV-05600 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

had been granted a June 3, 2014 order allowing them to pray in congregation of up to 15 prisoners.

Even if plaintiff has established temporal proximity, retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this"). In addition, there is no evidence that either defendant expressed opposition to plaintiff's protected activity, or that defendants' reasons for reminding plaintiff about the parameters of the June 3, 2014 order were false or pretextual. Defendants' reminder to plaintiff that plaintiff was not permitted to engage in large group noon or afternoon congregational prayers during open dayroom was a factually accurate description of the June 3, 2014 order which specifically authorized: (1) "Faith prayer will be allowed to occur in the West Block during the evening activity program, approximately at sunset"; (2) "No more than 15-individuals will be allowed to participate in these sessions"; and (3) "Prayer will last no longer than 6 to 8 minutes." Dkt. No. 1 at 39.

Plaintiff has not provided any evidence of causation outside of temporal proximity. This is insufficient to show a causal connection. *See, e.g.*, *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim."); *Friedman v. Kennard*, No. 07-4116, 2007 WL 2807861, at **4 (10th Cir. Sept. 25, 2007) ("Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim."). There is simply no evidence from which it can be inferred that when defendants reminded plaintiff that the June 3, 2014 order did not include large group noon and afternoon congregational prayers during open dayroom, defendants were motivated by a retaliatory animus because plaintiff had engaged in filing a grievance.

Finally, as stated above, as to the fifth *Rhodes* factor, once a prisoner has pleaded the

absence of legitimate correctional goals for the conduct of which he complains, the burden shifts to defendants to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995). Because the court has already applied the *Turner* standard above, plaintiff cannot succeed on this fifth factor.

Alternatively, the court finds that defendants are entitled to qualified immunity. Even assuming that the law was clearly established that it was unlawful to retaliate against a prisoner for filing a grievance, receiving a favorable result from a grievance, or engaging in congregational prayer, a reasonable officer could believe that it was not unlawful to remind plaintiff of the grouping policy and the parameters of the June 3, 2014 order which permitted large group evening congregational prayer during open dayroom, but not large group noon and afternoon congregational prayer during open dayroom.

Accordingly, defendants' motion for summary judgment on plaintiff's retaliation claim is granted.

## VI.    Equal Protection Clause

Plaintiff alleges that defendants intentionally discriminated against plaintiff by refusing to allow plaintiff a reasonable opportunity to pursue Islam as compared to the opportunities provided to prisoners not of Islam faith. Compl. ¶ 40. Plaintiff further claims that defendants' actions were motivated by discriminatory intent. *Id.* ¶ 41.

Prisoners are protected by the Equal Protection Clause from intentional discrimination on the basis of their religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by Shakur*, 514 F.3d at 884-85. To prevail on an equal protection claim under 42 U.S.C. § 1983, a plaintiff must plead and prove that "the defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class." *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). An inmate "must set forth specific facts showing a genuine issue as to whether he

1   was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths

2   and that officials intentionally acted in a discriminatory manner." *Freeman*, 125 F.3d at 737.

3        Here, plaintiff alleges that while Muslim prisoners were limited to the grouping policy,

4   other religious and non-religious groups were permitted to congregate in groups of more than four

5   without any reprimand or interruption. However, plaintiff does not provide any evidence or facts

6   to support his assertion. There is no evidence that defendants failed to enforce the grouping policy

7   against non-Muslim prisoners, or even that defendants knew about larger non-Muslim prisoner

8   groups congregating. Plaintiff does not provide any evidence of what other opportunities

9   defendants provided to non-Muslim prisoners that defendants did not also provide to plaintiff. It

10   is undisputed that Muslim prisoners could engage in large group noon and afternoon

11   congregational prayers in the Muslim chapel. It is undisputed that all prisoners including Muslim

12   prisoners were able to pray individually or in congregations of up to four prisoners during open

13   dayroom. In fact, Muslim prisoners were granted an exception to the grouping policy in the June

14   3, 2014 order which permitted them to hold large group evening congregational prayer during

15   open dayroom approximately at sunset.

16        In sum, plaintiff has not come forward with evidence to raise a genuine issue of material

17   fact that defendants' reminder to plaintiff on November 17, 2014 that plaintiff was not permitted

18   to engage in large group noon and afternoon congregational prayer during open dayroom was

19   intentionally discriminatory, much less that such treatment was because of plaintiff's religion.

20        Although plaintiff generally complains of differential treatment between Muslims and

21   other faith groups, Ninth Circuit precedent states that because an equal protection claim requires

22   proof of intentional discrimination, "[m]ere indifference" to the unequal effects on a particular

23   class does not establish discriminatory intent. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167

24   (9th Cir. 2005). Plaintiff's conclusory allegations and mere assertions of discrimination against

25   his religion are insufficient to overcome a motion for summary judgment. Fed. R. Civ. P. 56; *see*

26   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). That is, plaintiff has "not . . . come forward

27

28   Case No. 15-CV-05600 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

with admissible evidence that, even viewed in the light most favorable to [him], demonstrates discriminatory intent." *Id.* at 1167. Without more, no constitutional claim can prevail.

Defendants' motion for summary judgment on plaintiff's equal protection claim is granted.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.[9] The clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

Dated: ___12/21/2017_____          _Lucy H. Koh_____
                                         LUCY H. KOH
                                         United States District Judge

---

[9] Because the court grants defendants' motion for summary judgment on the merits, the court finds it unnecessary to address defendants' additional arguments regarding plaintiff's claims against defendants in their official capacities and plaintiff's requests for damages based on emotional distress and for punitive damages.